~~Hand-Delivered~~

# UNITED STATES DISTRICT COURT

for the

Western District of North

Carolina Division

FILED
CHARLOTTE, NC

NOV 1 9 2018

US District Court
Western District of NC

|  |  |
|---|---|
| DARNELL WINSTON WALKER | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
|  | ) |
|  | ) |
| ROBERT L. WILKIE, | ) |
| SECRETARY OF VETERANS AFFAIRS | ) |
|  | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case No. 3:18 cv 624 -RJC·DSC

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☒ Yes ☐ No

# COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Darnell W. Walker |
| Street Address | 12037 Journeys End Trail |
| City and County | Huntersville - Charlotte Mecklenburg County |
| State and Zip Code | North Carolina 28078 |
| Telephone Number | 804-920-2114 |
| E-mail Address | dwwalker51@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Robert L. Wilkie |
| Job or Title *(if known)* | Secretary of Veterans Affairs |
| Street Address | 810 Vermont Avenue, NW |
| City and County | Washington |
| State and Zip Code | DC 20420 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |

Telephone Number _____

E-mail Address *(if known)* _____

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Darnell W. Walker |
| Street Address | 1601 Brenner Avenue |
| City and County | Salisbury |
| State and Zip Code | North Carolina 28144 |
| Telephone Number | |
| | (704) 638-900 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:

Title VII of the Civil Rights Act (including the amendments in the 1991 Civil Rights Act), Retaliation Laws Title VII, § 1981 and § 1983- _____

☐ Relevant state law *(specify, if known)*:

_____

☐ Relevant city or county law *(specify, if known)*:

_____

Case 3:18-cv-00624-RJC-DSC    Document 1    Filed 11/19/18    Page 3 of 35

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐   Failure to hire me.
- ☐   Termination of my employment.
- ☐   Failure to promote me.
- ☐   Failure to accommodate my disability.
- ☒   Unequal terms and conditions of my employment.
- ☒   Retaliation.
- ☒   Other acts *(specify)*:    Workplace Harrassment,  Bullying, Hostile Work Envirinment

  *(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

November 4,  2015, November 21, 2015,  December 20, 2015 March 18, 2016 June  14, 2016,  June 29, 2016 , September 20, 2016

C.   I believe that defendant(s) *(check one)*:

- ☐   is/are still committing these acts against me.
- ☒   is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒   race          African American
- ☐   color
- ☒   gender/sex      Female
- ☐   religion
- ☐   national origin
- ☐   age *(year of birth)*          *(only when asserting a claim of age discrimination.)*
- ☐   disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows. Attach additional pages if needed.

On November 4, 2018, Dr. Robert W. Morris a Caucasian Male Optometrist at the Salisbury VMAC, sent an email to the then Salisbury Facility Telehealth Coordinator Zena Thompson an African American Female, a newly revised Telehealth Program Analyst(Data) Performance Plan FY2016 for Ms. Thompson to have Ms. Walker review. Ms. Walker was unaware that Dr. Morris had sent Ms. Thompson the new critical areas for her Telehealth Program Analyst(Data) Performance Plan FY2016 and upon review of the 2016 Performance Appraisal Plan critical areas Ms. Walker identified areas belonging to the newly hired Caucasian Male Co-worker, Jeff Medlin who was a Store and Forward Program Specialists in the Optometry department. This position Dr. Morris had certified the Store and Forward Program Specialists Program position on 7-30-2013 in the GS -9, 0301 Miscellaneous Administration Program Series as a supervisor and certifying the duties and responsibilities of the position. Neither Dr. Morris or Ms. Thompson has any formal supervisory control over Ms. Walker at any time during her employment. Both Dr. Morris and Ms. Thompson are facility level employees and based on Ms., Walker's designation as a Veterans Integrated Service Network (VISN 6), both Dr. Morris and Ms. Thompson would be considered as subordinate co-workers to Ms. Walker. Dr. Morris conspired Ms. Thompson to assist him in making a numerous tangible employment actions which changed the scope of Ms. Walker's employment by placing duties from Mr. Medlin's position description as critical items on the Telehealth Program Analyst(Data) Performance Plan FY2016. The Agency contends that both Dr. Morris and Ms. Thompson acted within the scope of their supervisory rights but has failed to provide any evidence, documents to support what the rights are and how the rights were acquired. Retaliation
After filing a formal complaint against Dr. Morris on March 17, 2016, Ms. Thompson on the same day sent Ms. Walker an email changing her formal supervisory (the Chief of Staff of Primary Care Service Line, Dr. Dalsania) to an acting supervisor who took Ms. Thompson's place after she was promoted to another position. Dr. Morris began harassing me by assigning me menial clerk level tasks and complained repeatedly to my VISN 6 Telehealth Program Manager supervisor unsupported claims of my poor work performance. Upon the official hiring of my new supervisor, Jennifer Terndrup, Dr. Morris immediately began to backlist me by using words. "she's not much of a team player", not good customer service" "she does not have a positive attitude" which was positively received by my new supervisor who Dr. Morris had also convinced that he was acting in the scope of unsupported authorities and responsibilities. The result of this was there was no investigation of Dr. Morris claims however I received numerous verbal counseling's from my new supervisor which impacted my request to work at a different location due to a serious health condition that my Mother was experiencing. See Attached Coninuation of Statement of Claim(3 pages), EEO Complaint (15 pages)and Right to File(10 pages).

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☒     issued a Notice of Right to Sue letter, which I received on *(date)*     8/21/2018     .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     less than 60 days have elapsed.

## V.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Compensatory Damages - Plaintiff seeks monetary damges in the amount of 200, 000  based on the Agency's allowig a co-worker to make tangiblr employment decisions that influenced the scope of the Plaintiff employment. The Agency failed to protect Plaintiff  from discrimination, harrassment, and retaliation, failed to investigate retaliation claims, failed to protect Plaintiff from a co-workers discrimination, failed to follow the Union agreement  by not allowing the AFGE to review changes made to Plaintiff 2016 Apprasial Plan critical areas and for the Agency allowing  co-worker to  acted in a manner consistent with Plaintiff's supervisor without any documents to support this realtionship was legal or existed or without any business reason or neccessity. The Plaintiff has suffered emotional distress and suffered, inconvenience, increased workload, injury to professional standing, injury to attacks on character and reputation, humiliation,causing  increased migraine  headaches, insomina and was subjected to retaliation which resulted in the Agency lack of support in not meetign the legal timeframe for Plaintiff's request for a 4 month geographic Telework relocation request to care for my Mother who was suffering with terminal cancer . The Plaintiff will also seek individual damages from the employee who discriminated and retaliated against the Plaintiff which  adversely affected the plaintiff's  emotional health related to concern for job and future promotion opportunities. Non-monetary relief  put into place corrective or preventive measures which minimize chances of reoccurrence  and discontinue the practice of allowing co-wokers to act in the manner consistent with superviors without proper documentation and Union freview and change Plaintiff's 2016 Performance Apprasial to represent the Plaintiff actual positon,duties  and position description.

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    11-19-2018

Signature of Plaintiff

Printed Name of Plaintiff    Darnell Winston Walker

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Darnell W. Walker – Additional Statement of Claim - Case Number _____

Background

Darnell Walker is an African American female and was hired on or about February 21, 2014 by the Veterans Administration as a GS-11, VISN 6 Data Management Coordinator in the 0343 Management Program Analyst Series. This designation is the Veterans Integrated Service Network (VISN 6) and is located Durham North Carolina and is supported by a VHA T21 Implementation Guide document. The VISN 6 office is made up of the high-level staff members who provide oversight, guidance and direction to all the seven the subordinate facilities (Durham, Fayetteville, Hampton, Asheville, Richmond, Salem and Salisbury). Ms. Walker is a VISN employee who is physically located at the Salisbury NC VMAC, where she was aligned under the Chief of Staff of Primary Care, and her only formal supervisor during the time that the discrimination occurred was Dr. Parag Dalsania. Ms. Walker is scope of duties outlined in her position description is to responsible for providing Data coordination for all seven facilities which include three Telehealth Modalities (Home Telehealth, Clinical Video Telehealth and Store and Forward Telehealth) with each facility having all three Telehealth modalities. Ms. Walker's position is considered a staff level position which is the reason that the Chief of Staff of Primary Care, Dr. Dalsania was designated as the supervisor of Ms. Walker.


Ms. Walker's duties include data analysis, reports, preparing presentations, evaluating processes, Telehealth staff training and organizational trend analysis which is outlined in Ms. Walker's position description. Mr. Medlin, is a store and Forward Program Specialist and works directly for Dr. Morris' Store and Forward programs with specific duties which include responsibilities related to Dr. Morris' Teleretinal and Store and Forward programs, consults, reading center analysis and management, coding errors, VERA funding/reimbursement , TRI staff competencies /certification, program development , Store and Forward Program development, outcomes management travel costs, special projects assigned by the VISN 6 Telehealth Program Manager, and National levels, Internal Conditions of Participation, External Joint Commission accreditation processes, establishing Telehealth clinics, identifying programs for Store and Forward using high Non-VA Care costs, high travel costs, electronic waits lists, serves as VISN consultant for all aspects of Store and Forward, and monitors workload capture and coding. Based on OPM Classification Ms. Walker Series is GS-0343 Management Program Analyst and Mr. Medlin series is GS-0301 Miscellaneous Administration Program Series and there is no overlap in any of these series, grades or duties and are excluded from one another

Dr. Morris in an email dated March 18, 2014, stated he virtually directed all of Ms. Walker's work. However, this is inconsistent with Ms. Walker's formal designated supervisor and her position description provided to her in February 2014 upon being hired for her position as the VISN 6 Data Management Coordinator. Dr. Morris did not hold any VISN level Program Manager's designation as outlined in Ms. Walker's position description. Specifically outlined in Ms. Walker's position description and directly related to her VISN level position, Ms. Walker's position was under the supervision controls was placed under the supervision of the VISN 6 Telehealth Program Manager, Dr. Mary C. Foster (Retired in 2017) who was responsible for the identification of the work to be done by Ms. Walker, and the scope of projects, assigning and monitoring deadlines and project evaluation, reporting. The only two supervisors of record are Dr. Dalsania and Dr. Foster.

On November 4, 2015, Dr. Robert W. Morris conspired and solicited assistance from Ms. Zena Thompson to change the Ms. Walker 2016 Performance Appraisal Plan critical areas to include numerous assignments belonging to a Caucasian Male co-worker, Mr. Jeff Medlin who was hired to perform the duties and who is directly supervised by Dr. Morris.

1

On or about December 20, 2015, Ms. Thompson called Ms. Walker to her office and gave Ms. Walker her Program Analyst(Data) Performance Plan FY2016 for review with the Title of rater preparing this performance plan block was left blank.

In the month of or about February 2016, Ms. Thompson was promoted into another position as Chief Nurse of Primary Care and was no longer the Facility Telehealth Coordinator for Salisbury. The acting the Facility Telehealth Coordinator for Salisbury was Ms. Jennifer Terndrup.

Reprisal/Retaliation

On March 11, 2016, received an email from Mr. Chad Fenton (ORM) acknowledging my EEO complaint.

On March 18, 2016, The EEO Counselor, Mr. Fenton(ORM) sent me an email at 9:59 AM outlining the interview he had with Dr. Morris regarding my allegations.

The Agency contends that Ms. Thompson the then facility Telehealth Coordinator was Ms., Walker First Line supervisor and had rights to make changes to Ms. Walker's Program Analyst(Data) Performance Plan FY2016.On the same date March 18, 2016, that Mr. Fenton interview Dr. Morris at 4:27PM , Ms. Thompson the Chief Nurse of primary Care and was no longer the Facility Telehealth Coordinator for Salisbury sent Ms. Walker an email stating her formal supervisor was being changed from Dr. Parag Dalsania to Ms. Terndrup for no reason at all. Dr. Dalsania has been Ms. Walker's supervisor for 2 years without any issues. Ms. Terndrup was still in the acting roles at the time of the change March 18, 2018.

On April 12, 2016, Ms. Thompson the Chief Nurse of primary Care sent Ms. Walker an email to come and go over her mid-year Program Analyst(Data) Performance Plan FY2016. Ms. Thompson has signed as the Title of Tater preparing this performance plan block and had backdated it to October 31, 2015. Ms. Walker signed the front of the Performance April plan but did not date it. Ms. Walker signed the Mid-year portion of the plan and dated it April 12, 2016. Ms. Thompson placed the October 31, 2016 date on the front page of the Program Analyst(Data) Performance Plan FY2016 which gave the appearance that Ms. Walker had signed it earlier. However numerous copies do not bear nay signature or date of Ms. Walker.

On April 12, 2016, Ms. Walker sent a Memorandum for Record to her personal email stating that she signed the Appraisal plan as to not involve her new supervisor, Ms. Terndrup and because she had a pending EEO case related to the Program Analyst(Data) Performance Plan FY2016.

On March 19, 2016, Dr. Morris sent Plaintiff a task to complete a Store and Forward Teledermatology grid for Dr. Morris' area of responsibility and is a specific duty of the Caucasian Male Program Specialists who Dr, Morris directly supervises.

On May 9, 2016, Dr. Morris sent an email for me to develop a Store and Forward Orphan Dashboard which is not part of my position description and is a part of Dr. Morris area of responsibility and is a specific duty of the Caucasian Male Program Specialists who Dr, Morris directly supervises.

On or about June 14, 2014, Dr. Morris met with the Plaintiff newly hired supervisor Ms. Terndrup and made statements and attacks to her professional attributes and character which prompted the supervisor to give the Plaintiff a verbal counseling.

On or about June 27, 2016, Dr. Morris sent Plaintiff email stating that a Data based had been updated so Plaintiff could provide a Data Report for a Physician on June 29, 2016.

On or about June 29, 2016, Dr. Morris complained to the Plaintiff newly hired supervisor stating that I failed to provide an important Data element to the physician.

On or about June 29, 2016, Plaintiff's newly hired supervisor, Ms. Terndrup called Plaintiff into her office and gave a verbal counseling based solely on Dr. Morris unsupported allegation of the missed suspense.

On September 20, 2016, before Dr. Morris September 29, 2016 EEO examination, Dr. Morris went into the Plaintiff 2016 Performance Plan and made modifications to Ms. Walker's 2016 Performance Appraisal plan.

On September 15, 2017 Ms. Walker submitted a request through Ms. Terndrup, to Dr. Dalsania requesting Different Geographic Location (Emporia Va)- Schedules Flexibilities for Elder Care – Care for a Family Member with a Serious Health Condition. Dr. Dalsania failed to respond to my request in the stated timeframe and the request was approved November 8, 2017 well after the within 20 business days of the initial request, and Ms. Walker told the request was approved but never received the paperwork and never relocated to Emporia Virginia. Ms. Walker's Mother died November 22, 2017. Ms. Walker provided Dr. Dalsania with the laws governing her request.

Darnell W. Walker

OMB NO.: 2900-0716
EXPIRATION DATE: MAY 31, 2018
RESPONDENT BURDEN: 30 Min.

**Department of Veterans Affairs**

# COMPLAINT OF EMPLOYMENT DISCRIMINATION

*Read the instructions on the reverse side of this form carefully before completing the front of this form.*

| 1. NAME *(Last, first, middle initial)(Please print)* | 3. MAILING ADDRESS | 4a. WORK TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| WALKER, DARNELL W. | 12037 Journeys End Trail<br>Huntersville NC 28078 | 704638-90005025 |
| 2. EMAIL ADDRESS | | 4b. PRIMARY TELEPHONE NUMBER *(Include Area Code)* |
| darnell.walker@va.gov | | (804) 920-2114 |

| 5. ARE YOU: | 6a. JOB TITLE, SERIES AND GRADE | 7. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED |
|---|---|---|
| [X] A VA EMPLOYEE | VISN 6 Data Analyst/Coordinator-Telehealth (0343) GS-11 | Salisbury VAMC |
| [ ] AN APPLICANT FOR EMPLOYMENT | 6b. SERVICE/SECTION/PRODUCT LINE | 1601 Brenner Avenue |
| [ ] A FORMER VA EMPLOYEE | Primary Care Service Line | Salisbury NC 28144 |

NOTE: For each employment related matter that you believe was discriminatory you must list the bases *(list one or more of the following):*
Race *(Specify)*, Color *(Specify)*, Religion *(Specify)*, Sex *(Male or Female)*, National Origin *(Specify)*, Age *(Provide date of birth)*,
Disability *(Specify)*, Genetic Information *(including family medical history)*, and/or Reprisal for participating in the EEO process or opposing unlawful discrimination.

| 8. BASIS | 9. CLAIM(S)<br>*(What employment related claim(s) - personnel action(s), incident(s), or event(s) caused you to file this complaint? Briefly state the specific claim, personnel action and/or event that caused you to file this complaint. Use an additional sheet of paper if necessary. You should not include information that violates the Privacy Act of 1974 and the Health Insurance Portability and Accountability Act (HIPAA). Some examples are patient medical records, personal records of other VA-employees, etc.)* | 10. DATE OF OCCURRENCE *(Include the most recent date(s))* |
|---|---|---|
| African American<br><br>Female | Case Number - 2004-0659-2016102631<br>Changes made to my Evaluation/Performance/Appraisal/Proficienc<br><br>Actions involving appraisal change and subsequent unequal duty assignments, bullying, hostile work environment.<br><br>Complaint Background and Allegation details are contained in the attached documents (Pages 1-8). | February 18, 2016<br><br>March 10, 2016<br><br>APR 1 4 2016 |

11. REMEDIES SOUGHT *(Use an additional sheet of paper if necessary.)*
Remedies sought will be determined based on Civil Rights Acts and Laws, EEO guidelines and the magnitude of discrimination that has occurred. This will be discussed in the resolution phase of the complaint.

| 12a. DO YOU HAVE A REPRESENTATIVE? | 12c. PROVIDE THE NAME AND ADDRESS OF YOUR REPRESENTATIVE | 12d. TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| [ ] YES  [X] NO | | |
| 12b. IF "YES," IS HE OR SHE AN ATTORNEY? | | 12e. EMAIL ADDRESS |
| [ ] YES  [X] NO | | |

| 13a. HAVE YOU CONTACTED AN EEO COUNSELOR? | 13b. NAME OF EEO COUNSELOR | 13c. DATE OF INITIAL CONTACT WITH ORM |
|---|---|---|
| [X] YES  [ ] NO | Chad Fenton | 03/11/2016 |

14. If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, listed in item 10, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint, you must explain why you were untimely in seeking EEO counseling or untimely in filing a complaint. *(Use an additional sheet of paper, if necessary.)*

| 15a. HAVE YOU FILED A UNION GRIEVANCE ON ANY CLAIM(S) LISTED ABOVE? | 15b. IF "YES," LIST THE CLAIM(S) AND DATE GRIEVANCE FILED | 16a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE CLAIMS LISTED ABOVE? | 16b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED. |
|---|---|---|---|
| [X] YES  [ ] NO | March 1, 2016<br>Rescinded on 4/1/2016 | [ ] YES  [X] NO | |
| 17a. HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE? | 17b. IF "YES," PROVIDE THE NAME AND ADDRESS | | |
| [ ] YES  [X] NO | | | |

| 18. SIGNATURE OF COMPLAINANT *(Do not print)* | 19. DATE |
|---|---|
| | 4-5-2016 |

VA FORM 4939
MAY 2015

SUPERSEDES VA FORM 4939, MAR 2013,
WHICH SHOULD NOT BE USED.

000003

Darnell W. Walker
12037 Journeys End Trail
Huntersville NC 28078

Date 3-29 -2016

Allegation of Discrimination:

I am an African American Female and a member of the Salisbury VAMC VISN 6 Telehealth team assigned to the Primary Care Service line. I would like to file a formal complaint against Dr. Robert W. Morris, VISN 6 Co-Lead Telehealth and Store and Forward (SFT) Teleretinal Imaging Chief. As a member of a protected class, I am alleging discrimination based on differential and disparate treatment which I consider as being demonstrated changes made to my appraisal reflecting specific duties of the VISN 6 SFT Program Specialist and Program Support team members position descriptions (PDs) which has turned into workplace bullying, misuse of power/position and unequal treatment of me as a member of the Salisbury VAMC VISN 6 Telehealth team.

Claim # 1 – Discriminatory Intent

In October 2015, Dr. Morris without any supervisory rights, regulatory guidance from Human Resources and/or Union guidance and without any justification based on some written human resources directive made major changes to my appraisal critical elements area. Changing my critical elements appraisal areas cannot be justified by Dr. Morris by as being necessary and being made as the result of any employment policy, practice, VISN6/VACO focus area or position description change to the VISN 6 Data Analyst/Coordinator duties and/or to the VISN 6 SFT Program Specialist position duties.

1

The changes made to my critical appraisal elements are not specifically outlined by my position description (PD) but are specific to the VISN 6 SFT Program Specialist Telehealth team member and some possible overlapping duties of the Program Specialist.

Dr. Morris removed the majority of my VISN 6 Program Data Analyst/Coordinator level critical elements from my appraisal which involved data management, monitoring, analysis and evaluation and replaced them with VISN 6 SFT Program Specialist team members specific descriptions (PDs) major duties which was cut and pasted from several positions and place on my appraisal as critical level appraisal elements.

These new critical elements which were placed on my appraisal were directly related to Store and Forward program specific duties involving correcting reports with coding errors, gathering and maintaining files for all Teleretinal clinical staff regarding training certificates, clinical privileges and proficiency evaluations, analysis and management of TR reading centers, clinical activities including consult management, analysis and management of TRI reading center administrative activities including financial, workload credit, data validation, Veterans Equitable Resource Allocation(VERA) funding, outcomes, measures, travel costs and effectiveness of SFT, high travel costs and electronic wait lists. In the past two years I had never been required to perform any Store and Forward (SFT) specific duties nor has any of the Store and Forward(SFT) specific duties been place on my appraisal in the past two years..

Claim # 2

Dr. Morris although not my supervisor, has not attempted to equally distribute duties relating to the Store and Forward Telehealth program between the three team members and allowed the two other team members to work outside of their hired positions. Dr. Morris'

2

changing of my critical elements on my appraisal began using power/position to "force me" to complete duties outside of my position which undermines my job performance as the VISN 6 Data Analyst/Coordinator.

Dr. Morris shortly after the meeting on February 18, 2016 began to inundate me with clerk related duties and specialized duties related to the VISN 6 SFT Specialist position description. This new pattern of unequal distribution of work and assignment of Store and Forward (SFT) specific duties started after Dr. Morris disclosed his personal bias and feelings of what type of workload that I should have based on my **"pay"** grade.

Dr. Morris work load distribution and assigned duties after the meeting are designed to humiliate and degrade while also made it impossible for me to accomplish important VISN level position duties. Dr. Morris has assigned me numerous duties not consistent with the GS level or position description which should be closely related to staff level capacity.

Dr. Morris is using his position to degrade me by treating me like a clerk and not at the level of my knowledge, skills and abilities which is the sole reason that I am at a higher grade than the two Program Specialist personnel. Dr. Morris is using his power/position to bully me into completing tasks which should be distributed between the two Program specialists. These additional duties are being placed on me to increase my workload and decrease the workload of the SFT Program Support team.

Claim # 3

In email dated March 19, 2016 from Mr. Fenton, Dr. Morris responded to questions relating to my allegations. Dr. Morris stated he changed my appraisal to replace my initial critical elements with the new critical elements because" he "believed" the duties were

3

commensurate with my grade". Dr. Morris was well aware these duties were from on VISN 6 SFT Program Specialist position when he placed them as critical elements on my appraisal and further review of both the VISN 6 Program Data Analyst/Coordinator and VISN 6 Program Specialist duties will clearly show unmistakable differences between the two positions.

Claim # 4 – Discriminatory Intent

This "discriminatory intent" was revealed in a February 18, 2016 meeting initiated by Dr. Morris to discuss major changes that Dr. Morris made to my initial 2014 appraisal. In this meeting with Dr. Morris, Zena Thompson (Previous Facility Telehealth Coordinator), and I we discussed three major changes relating to my appraisal critical elements.

In the February 18, 2016 meeting Dr. Morris was asked numerous times by me why he had taken specialization duties from the VISN 6 SFT Program Specialist position and placed them on my appraisal as critical elements.

In my final question asking again why he (Dr. Morris) had placed the VISN 6 SFT Program Specialist duties on my appraisal, Dr. Morris responded "I was at a higher **"pay"** grade( and not the reference to my "grade" as stated in the email dated March 19, 2016) which is substantially higher than the VISN 6 SFT Program Support position.

I responded to Dr. Morris with "that is exactly what I thought the reason was for the changes to my appraisal" and asked to be excused from the meeting. Ms. Thompson then asked Dr. Morris prior to me leaving the meeting "if the VISN 6 SFT Program Support Specialist team member had the same critical element on his appraisal". Dr. Morris responded with "I don't remember and appraisals are personal to the individual".

4

000007

In my opinion Dr. Morris statement "constitutes discriminatory intent" in changing my appraisal or the reason of my higher **"pay"** grade and not using source documents such as the Position description and job announcement which reflects my VISN 6 duties and responsibilities of which I provide Telehealth data support all 7 facilities and the VISN.

Dr. Morris' subsequent actions related to the type of duties he (Dr. Morris) assigned me and his response is that of an individual with beliefs that my higher **"pay"** grade is not based on my level of experience, education and skill sets that I possess which was required for this position but is being used as an opportunity to add additional duties to relieve my VISN 6 team member of some of his duties.

Background:

Dr. Morris is the VISN 6 Telehealth Co-Lead and the SFT Teleretinal Imaging Chief working in the Optometry Service line. Dr. Morris has been in his position as VISN 6 Co-Lead for Telehealth since approximately 2008. I was hired in February 2014 as the VISN 6 Data Analyst/Coordinator assigned to the Primary Care Service line. My supervisor chain is the Primary Care Chief of Staff and the Facility Telehealth Coordinator.

Dr. Morris is not in my supervisory chain and was not in the supervisory chain of my predecessor. Dr. Morris in the past two years has not rated me on my appraisal, he does not approve my leave/sick leave, and Dr. Morris has not or does not monitor my day to day work activities. Dr. Morris and I are co-located at the Salisbury VAMC and have in the past and currently collaborate on many projects and data elements as VISN 6 team members for the Telehealth Program.

5

Dr. Morris' role I state with respect is equal to any facility level Telehealth customer who requests data elements, presentation, classes or Telehealth related information related to data and data analysis. This same relationship is also the relationship that I have with the VISN 6 Program Lead for Telehealth.

The VISN 6 Program Lead for Telehealth located in Durham NC does not have any supervisory rights over me and with respect to the individual and position the VISN 6 Program Lead for Telehealth is a customer who requests data like the Co-Lead and the seven facilities that I also serve as the VISN 6 Data Analyst/Coordinator. The VISN 6 Program Lead for Telehealth does not monitor my day to day work load, does not approve leave/sick leave and has not input on my appraisal or my appraisal rated critical elements.

I am in more a staff level position with VISN- wide responsibility where I greatly respect both Telehealth Lead positons although but lack any supervisory aspect to position and have no authority to make changes to my appraisals. Both positions due to being Telehealth program leads can provide input into how they feel that I am performing my duties to my supervisors.

Dr. Morris has two individuals directly reporting to him and who he directly supervises. These individuals were hired approximately August – October 2015 time frame. The positions are VISN 6 Store and Forward Program Support and Program Specialist and are filled with Caucasian individuals, a male and female respectfully. These positions have overlapping duties related to Store and Forward Program under the direct guidance of Dr. Morris and include numerous duties place on my critical elements area on my appraisal.

My Caucasian Male VISN 6 SFT team member is working in the Miscellaneous Administration and Program Series, GS-0301 (GS-9) with a specialized work for which no

6

appropriate occupational series has been established. Based on the U.S. Office of Personnel Management (OPM) guidelines the Miscellaneous Administration and Program Series, GS-0301 involves specialized work unlike the Management and Program Series, GS-0343.

I am working in the 0343 – Management and Program Analyst Series as a VISN 6 Telehealth Program Data Analysis/Coordinator (GS 11). This designation as VISN 6 Program Specialist Telehealth position duties was required to be certified and signed by the immediate supervisor.

This position was certified as a SFT Program Support Specialist was signed by Dr. Morris immediate supervisor certifying to the accuracy of the position description on 7-30-2013 with the organizational title of the position, Store and Forward (SFT) Program Specialist.

Once the position is certified the major duties and responsibilities are described in the position description based on the classification. Dr. Morris is fully aware of specialized duties is inherent in this VISN 6 Program Support Specialist Telehealth position and the VISN 6 Program Support Analyst/Coordinator as Dr. Morris is not new to the Telehealth Co-lead position and has been in the position since approximately 2008.

7

This is the end of my Statement until this is formally investigated and I am giving the opportunity to provide additional documentation to support my allegations.

Darnell W. Walker

8



August 22, 2016

In reply refer to: 08D

VIA: U.S. Mail

Darnell Walker
12037 Journeys End Trail
Huntersville, NC 28078

**SUBJECT: Notice of Amendment of Complaint No. 2004-0659-2016102631, filed on April 5, 2016**

1. This acknowledges receipt of an amendment request to your EEO discrimination complaint case referenced above.

2. EEO regulations permit a complainant to amend a complaint at any time before the conclusion of the investigation by adding claims that are "like or related" to those raised in the original complaint. The regulations provide that new evidence be reviewed to determine whether it:

   a) Provides additional evidence to support the existing claim, but does not raise a new claim in or of itself;

   b) Raises a new claim that is "like or related" to the claim raised in the pending complaint; **or**

   c) Raises a new claim that is not "like or related" to the claim raised in the pending complaint.

A new claim or additional evidence is considered like or related to the initial complaint if it adds to or clarifies it, or could reasonably be expected to have grown out of the initial complaint.

3. The current accepted claim, as indicated in your Notice of Acceptance letter dated June 27, 2016, is one of hostile work environment consisting of four events.

4. On July 23, 2016, you requested the following be amended to the existing complaint:

Whether Complainant was subjected to a hostile work environment based on race (Black), sex (female), and retaliation[1] as evidenced by the following events:

---

[1] Complainant added an additional basis during amendment of complaint.

CONFIDENTIAL DOCUMENT – GENERATED IN THE ORM COMPLAINT AUTOMATED TRACKING SYSTEM (CATS)

5. On June 14, 2016, during a meeting with Complainant's supervisor, she was made aware RM accused her of not being a team player.

6. On June 29, 2016, RM went to Complainant's supervisor complaining about her in reference to an error on a scorecard which was previously taken care of in April 2016.

5. The matters raised represent additional evidence to support the existing claim. Your complaint is therefore amended as follows:

**Whether Complainant was subjected to a hostile work environment based on race (Black), sex (female) and retaliation, as evidenced by the following events:**

1. On October 31, 2015, Complainant received her annual performance evaluation which was altered to reflect patient care duties, which are not part of her job description.

2. On February 17, 2016, Dr. Robert Morris (RM), Optometrist, revised the Complainant's annual performance evaluation to contain a critical element dealing with critical analysis, which did not commensurate with her position description.

3. On February 18, 2016, RM assigned Complainant clerk-related and specialized duties related to the VISN 6 SFT Specialist position description.

4. On March 10, 2016, RM questioned Complainant if she completed a work project and when she informed him she had not, he replied back asking if another employee can assist her on the project, and asked her to summarize all of her assigned tasks.

5. On June 14, 2016, during a meeting with Complainant's supervisor, she was made aware RM accused her of not being a team player.

6. On June 29, 2016, RM went to Complainant's supervisor complaining about her in reference to an error on a scorecard which was previously taken care of in April 2016.

**Events 2 and 3** have been **accepted** for investigation as independently actionable claims of disparate treatment.

6. If you believe that the amended claim is improperly formulated, incomplete, or incorrect, a written statement outlining your disagreement may be submitted. If a

CONFIDENTIAL DOCUMENT – GENERATED IN THE ORM COMPLAINT AUTOMATED TRACKING SYSTEM (CATS)

written statement is submitted, it will be included as part of the official record in the complaint file.

7. The amended complaint will be assigned to an investigator who will contact you directly in order to obtain information or evidence you may wish to offer. You will be provided a copy of the investigative file upon completion.

8. As a result of this notification of an amendment to the complaint, the time frame for completion of the investigation is adjusted. **The agency must complete its investigation within the earlier of 180 calendar days after the last amendment to the complaint or 360 calendar days after the filing of the original complaint.** ORM will make every good faith effort to complete the investigation within the prescribed period. However, where workload demands make it impossible to complete a timely investigation, we will work with you and your client to seek a mutual agreement to extend the period so that the investigation can be completed before seeking an EEOC hearing or a final agency decision (FAD) from OEDCA. Your client's rights to elect an EEOC hearing or an agency FAD remain the same as outlined in the original notice of acceptance.

9. The EEOC encourages the use of Alternative Dispute Resolution (ADR) to resolve EEO complaints at the lowest possible level. Agencies and complainants can realize many advantages from using ADR. ADR offers the parties the opportunity for an early, informal resolution of disputes in a mutually satisfactory fashion. If your client is interested in using mediation to address the issues raised in the complaint, please contact the ORM Case Manager listed below or the ADR Program Manager at 888-737-3361.

10. Our fax number is (202) 632-9604 or 9605. If you have any questions, please contact me at (202) 632-9580.

Sincerely,

Aylanda Cameron
District Manager
North Atlantic District – Washington, DC

Enclosure:    Complainant Rights

cc:   Emilie K. Green, Director
      Capresha Caldwell, EEO Program Manager

CONFIDENTIAL DOCUMENT – GENERATED IN THE ORM COMPLAINT AUTOMATED TRACKING SYSTEM (CATS)

Darnell W. Walker – Case Number: 2004-0659-2016102631

## Clarification of Complaint of Retaliation/Reprisal

The letter dated August 22, 2016, "Subject: Notice of Amendment of Complaint No. 2004-0659-2016102631 filed on April 5, 2016" paragraph 6 addressed if I thought that the amendment was incorrectly written.

I offer the following clarification:

5. The incident described in 5. "On June 14, 2016, during a meeting with Complainant supervisor, she was made aware RM accused her of not being a team player is not being stated in the context in which it was written in my original retaliation/reprisal complaint dated July 8, 2016.

The claim is as follows:

I received a data request for data from a mental health provider on June 17, 2016 for a meeting on June 29, 2016 and Dr. Morris who is not in my supervisory chain was copied furnish on the email.

On June 21, 2016 Dr. Morris wrote an email to both Dr. Walker and I stating that at least one slide can from this report on the TH secure document portal. I emailed Dr. Morris on June 22, 2016 to ask where the site was located and Dr. Morris responded on the same date with the web address but his(Dr. Morris') stated in his email that the site was not working due to some stop code issues and other errors and he(Dr. Morris) would have it ready in a few days.

On June 24, 2016 Dr. Morris sent me an "updated" Mental health script, "here is the updated script" and giving me information on how to run the script to get the data. I worked on it for 4 days only to find out that the Script had not been updated and the Script was not correct. When I was unable to get the updated mental health data.

Dr. Morris went to my current supervisor on June 29, 2016 to complain causing my supervisor called me in for a meeting referencing an error on the Scorecard which was taken care on two months ago, April 2016 shortly after my initial claim of discrimination.

Dr. Morris also stated during this and a subsequent meeting with my supervisor that I was not a team player, which was discussed in a meeting with my supervisor on June 14, 2016. Dr. Morris stated that I did not provide Dr. Walker with the data for an important meeting. Dr. Morris was well aware that the site had not been updated until the day of the meeting which made it impossible for me to have access to the data.

Case 3:18-cv-00624-RJC-DSC    Document 1    Filed 11/19/18    Page 23 of 35

Darnell W. Walker – Case Number: 2004-0659-2016102631

## Intent to Request a Hearing with an Administrative Judge

In the letter dated August 22, 2016, "Subject: Notice of Amendment of Complaint No. 2004-0659-2016102631 filed on April 5, 2016" paragraph 8 notes the adjustment to the timeframe. The paragraph cited" *the agency must complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint"*.

Pursuant to § 1614.106(e) below, the ORM has acknowledge and process receipt of an amended complaint in writing in a letter dated August 22, 2016. However in (2) it expanded on your statement referenced in paragraph 8 of your amendment letter to include:

*"except that the complainant may request a hearing from an administrative judge on the consolidated complaints any time after 180 days from the date of the first filed complaint".*

**Based on this and my email** sent August 22, 2016 to Cheryl Thompson-Wilson, (ORM) stating my intent to have a hearing after the 180 day timeframe has passed based on the letter received from the ORM dated August 11, 2016 stating that the investigation will take longer than the 180 day timeline(October 2, 2016). This letter also asked if I would be willing to sign a voluntary extension for the investigation to be complete December 31, 2016.

I will not be signing a voluntary extension due to my right to request a hearing after the 180 timeframe has passed since the filing of the original complaint. See page 2.

Additionally you make reference to "your Client in Paragraph 8, stating "Your client's rights to elect an EEOC hearing or an agency FAD remain the same as outlined in the original notice of acceptance. I am asking you to clarify this statement as I am under the impression that a "client" is someone or an organization using legal services. Please advise me of who this statement is pertaining to.

V/r

Darnell W. Walker

3

000068

**Reference Document for a Hearing with an Administrative Judge**

**1614.106 Individual complaints.**

(a) A complaint must be filed with the agency that allegedly discriminated against the complainant.

(b) A complaint must be filed within 15 days of receipt of the notice required by § 1614.105 (d), (e) or (f).

(c) A complaint must contain a signed statement from the person claiming to be aggrieved or that person's attorney. This statement must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint. The complaint must also contain a telephone number and address where the complainant or the representative can be contacted.

(d) A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint.

(e) The agency shall acknowledge receipt of a complaint or an amendment to a complaint in writing and inform the complainant of the date on which the complaint or amendment was filed. The agency shall advise the complainant in the acknowledgment of the EEOC office and its address where a request for a hearing shall be sent. Such acknowledgment shall also advise the complainant that:

(1) The complainant has the right to appeal the final action on or dismissal of a complaint; and

(2) The agency is required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period. When a complaint has been amended, the agency shall complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint, except that the complainant may request a hearing from an administrative judge on the consolidated complaints any time after 180 days from the date of the first filed complaint, even if the agency's investigation has not been completed.

000069



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Atlanta District Office**

100 Alabama Street, S.W.
Suite 4R30
Atlanta, GA 30303
(404) 562-6887
TTY (404) 562-6801
1-800-669-4000
Website: www.eeoc.gov

DARNELL W. WALKER,

Complainant,

v.

ROBERT WILKIE, SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

Agency.

EEOC NO.
430-2017-00046X

AGENCY NO.
2004-0659-2016102631

DATE: August 21, 2018

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed DECISION AND ORDER GRANTING AGENCY'S MOTION FOR SUMMARY JUDGMENT dated August 21, 2018, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached to the DECISION AND ORDER.

This office will hold the report of investigation and the complaint file for sixty (60) days, during which time the Agency may arrange for their retrieval. If we do not hear from the Agency within sixty (60) days, we will destroy our copy of these materials.

It is so **ORDERED.**

For the Commission:

Justin T. Evans
Administrative Judge

# UNITED STATES
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### ATLANTA DISTRICT OFFICE

DARNELL W. WALKER,

    Complainant,

    v.

ROBERT WILKIE, SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

    Agency.

EEOC NO.
430-2017-00046X

AGENCY NO.
2004-0659-2016102631

DATE: August 21, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2018, I have mailed, First-Class Postage Paid, and/or emailed the foregoing ORDER ENTERING JUDGMENT to the following individuals at the addresses listed below:

Darnell W. Walker
12037 Journeys End Trail
Huntersville, NC 28078
darnell.walker@va.gov

Janean B. Dunn, Esq.
Agency Counsel
janean.dunn@va.gov

U.S. Department of Veterans Affairs
Office of Employment Discrimination Complaint
Adjudication (OEDCA)
810 Vermont Ave., N.W.
Washington, D.C. 20420
eeocdecisionsforoedca@va.gov

Justin T. Evans
Administrative Judge



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Atlanta District Office**

100 Alabama Street, S.W.
Suite 4R30
Atlanta, GA 30303
(404) 562-6887
TTY (404) 562-6801
1-800-669-4000
Website: www.eeoc.gov

DARNELL W. WALKER,

Complainant,

v.

ROBERT WILKIE, SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

Agency.

EEOC NO.
430-2017-00046X

AGENCY NO.
2004-0659-2016102631

DATE: August 21, 2018

## DECISION AND ORDER GRANTING AGENCY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to 29 C.F.R. § 1614.109(g), and for the reasons that follow, the U.S. Department of Veterans Affairs' (the Agency) Motion for Summary Judgment is hereby **GRANTED**.

### I. SUMMARY

After carefully reviewing the Report of Investigation (ROI) and the parties' submissions, and drawing all reasonable inferences in the light most favorable to Complainant Darnell W. Walker, I find that the record has been adequately developed for summary disposition, that there exist no genuine issues of material fact as to the claims in this case, and that the Agency, therefore, is entitled to judgment as a matter of law.

### II. STATEMENT OF JURISDICTION

Authority to issue this Decision and Order is found in 29 C.F.R. § 1614.109(g) of the U.S. Equal Employment Opportunity Commission's (EEOC or Commission) regulations pertaining to federal sector equal employment opportunity. This regulation allows Administrative Judges (AJs) to issue findings of fact and conclusions of law when there is no genuine issue as to any material fact and no genuine issue as to credibility.

## III. PROCEDURAL HISTORY

On May 29, 2018, the Agency filed its Motion for Summary Judgment. On June 13, 2018, Complainant timely filed her Response. Accordingly, I find that the Agency's Motion has been fully briefed and is now ripe for determination.

## IV. STATEMENT OF THE ISSUE(S)

The Agency accepted the following claims for investigation:[a]

> Whether Complainant was subjected to disparate treatment based on race (Black) or sex (female) when:
> 2. On February 17, 2016, Dr. Robert Morris (RM), Optometrist, revised the Complainant's annual performance evaluation to contain a critical element dealing with critical analysis, which did not commensurate with her position description.
> 3. On February 18, 2016, RM assigned Complainant clerk-related and specialized duties related to the VISN 6 SFT Specialist position description.

## V. STANDARD GOVERNING DECISION WITHOUT A HEARING

The Commission's regulations provide that an AJ may issue a decision without a hearing if he or she finds that "some or all material facts are not in genuine dispute." 29 C.F.R. § 1614.109(g)(1). This regulation is patterned after the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, in light of the applicable substantive legal and evidentiary standards governing the case before it, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[I]n order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence, and must further establish that such facts are material under applicable law." *Complainant v. Dep't of the Navy*, EEOC Appeal No. 0120141708 (June 2, 2016). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence, but rather to determine whether a genuine, triable issue of fact exists. *Anderson*, *supra*, at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. *Id.* at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if it has the potential to affect the outcome of the case. *Id.*

---

[a] The number of accepted claims was narrowed based on my March 13, 2018, Order on Order to Show Cause.

If a case can only be resolved by weighing conflicting evidence, issuing a decision without a hearing is not appropriate. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without a hearing only upon a determination that the record has been adequately developed for summary disposition. *See Petty v. Dep't of Defense*, EEOC Appeal No. 01A24206 (July 11, 2003). Finally, an AJ should not rule in favor of one party without holding a hearing unless he or she is satisfied that the non-moving party has been given: (1) ample notice of the proposal to issue a decision without a hearing; (2) a comprehensive statement of the allegedly undisputed material facts; (3) the opportunity to respond to such a statement; and (4) the chance to engage in discovery before responding, if necessary. *Botwright v. U.S. Postal Service*, EEOC Appeal No. 0120061573 (Apr. 10, 2008).

## VI.   FINDINGS OF FACT,[b] APPLICABLE LAW, AND ANALYSIS

Title VII of the Civil Rights Act of 1964 (Title VII) prohibits discrimination based on race, sex, color, religion, or national origin with respect to the terms, conditions, or privileges of employment of federal agency employees. 42 U.S.C. § 2000e-16, *et seq.*

To prevail on disparate treatment claims such as the ones pending in this case, Complainant must show that the Agency intentionally discriminated against her when it made the employment decisions that form the basis for her complaint. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Complainant may prove her case through either direct or indirect evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003).

Direct evidence is "any written or verbal policy or statement made by the agency that on its face demonstrates a bias against a protected group and is linked to the complained of adverse action." *Pfenninger v. Dep't of the Treasury*, EEOC Appeal No. 01975117 (July 18, 2001); *see also Strawn v. Gen. Services Admin.*, EEOC Appeal No. 01943187 (June 20, 1996).

In the absence of direct evidence of discrimination, a claim alleging disparate treatment is examined under the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this analysis, the complainant must initially establish a *prima facie* case of discrimination by presenting facts, which, if unexplained, reasonably give rise to an inference of discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

A complainant can establish a *prima facie* case of disparate treatment by showing: (1) he or she is a member of a protected class; (2) he or she was subjected to adverse treatment; and (3) he or she was

---

[b]   The undersigned adopts and incorporates herein the Statement of Undisputed Facts set forth in the Agency's Motion.

treated differently than otherwise similarly situated employees outside his/her protected class. *Glynda S. v. U.S. Dep't of Justice*, EEOC Appeal No. 0120133361 (Feb. 23, 2016) (citing *Walker v. U.S. Postal Serv.*, EEOC Appeal No. 01A14419 (Mar. 13, 2003); *Ornelas v. Dep't of Justice*, EEOC Appeal No. 01995301 (Sept. 26, 2002)). But comparing the relative treatment of similarly situated employees is not the exclusive avenue for demonstrating a *prima facie* case of disparate treatment. "Proof of a *prima facie* case will vary depending on the facts of the particular case." *Shela O. v. Dep't of the Army*, EEOC Appeal No. 0120113826 (Dec. 18, 2015) (citing *McDonnell Douglas*, 411 U.S. at 804 n.14).

If the complainant establishes a *prima facie* case of disparate treatment, the burden shifts to the agency to articulate one or more legitimate, non-discriminatory reasons for the challenged actions. *See Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 802. If the agency does so, the complainant must prove, by a preponderance of the evidence, that the agency's articulated reasons for its actions were not its true reasons, but rather shams or pretexts for unlawful discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Hicks*, 509 U.S. at 511; *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804.

In appropriate circumstances, where the agency has articulated a legitimate, non-discriminatory reason for the alleged disparate treatment, the trier of fact may dispense with the *prima facie* inquiry and proceed to the ultimate determination of whether the complainant has demonstrated by a preponderance of the evidence that the articulated reason is pretextual. *Hilda H. v. Social Security Admin.*, EEOC Appeal No. 0120142944 (Jan. 25, 2017); *Complainant v. U.S. Postal Serv.*, EEOC Appeal No. 0120132950 (Feb. 26, 2014).

Before proceeding to Complainant's disparate treatment claims, I begin by considering whether she is "aggrieved." EEOC regulations, at 29 C.F.R. § 1614.107(a)(1), provide, in relevant part, that an agency shall dismiss a complaint that fails to state a claim. An agency shall accept a complaint from any "aggrieved employee" or applicant for employment who believes that he or she has been discriminated against by that agency because of race, color, religion, sex, national origin, age or disabling condition. 29 C.F.R. §§ 1614.103, 1614.106(a). The Commission's federal sector case precedent has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *Diaz v. Dep't of the Air Force*, EEOC Request No. 05931049 (Apr. 21, 1994). *See also Complainant v. Dep't of Transp.*, EEOC Appeal No. 0120150331 (Mar. 27, 2015).

I find that Complainant is not "aggrieved" as to either of her claims. Specifically, I find from the record that Complainant did not suffer a present harm or loss with respect to any term, condition, or privilege of employment for which there is a remedy as a result of: (1) the addition of a new critical element to her performance evaluation; or (2) her being required to complete some clerk-related and specialized duties related to the VISN 6 SFT Specialist position description. Neither act resulted in any loss of pay or benefits, or indeed any cognizable injury to Complainant.

Accordingly, I find that both of Complainant's claims should be, and now hereby are, **DISMISSED** for failure to state a claim, consistent with 29 C.F.R. §§ 1614.107(a)(1), 1614.109(b).

Assuming, *arguendo*, that Complainant was aggrieved and could establish a *prima facie* case of disparate treatment on one or both grounds of alleged discrimination as to both of her claims, I nevertheless find that the Agency articulated legitimate, non-discriminatory reasons for its actions. I further find that the record does not contain evidence sufficient to create a genuine issue of material fact as to the question of pretext. Accordingly, I find that the Agency is entitled to judgment as a matter of law as to both of Complainant's claims.

## VII. DECISION

WHEREFORE, the Agency's Motion for Summary Judgment is hereby **GRANTED**, as set forth above.

## VIII. NOTICE TO THE PARTIES

**TO THE AGENCY:**

Within forty (40) days of receiving this Decision and Order, you are required to issue a final order notifying the complainant whether or not you will fully implement this Decision and Order. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of Complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this Decision and Order, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. § 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9,

1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.


**TO THE COMPLAINANT:**

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the Agency informing you whether the Agency will or will not fully implement this Decision and Order, 29 C.F.R. § 1614.110(a). From the time you receive the Agency's final order, you will have thirty (30) days to file an appeal. If the Agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the Agency's forty (40) day period for issuing a final order. *See* EEO Management Directive 110, Chapter 9-3. In either case, please attach a copy of this Decision and Order to your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the Agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the Agency.

**WHERE TO FILE AN APPEAL:**

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

BY PERSONAL DELIVERY:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE, Suite 5SW12G
Washington, D.C. 20507

BY FACSIMILE:

Fax No. (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

It is so **ORDERED**.

For the Commission:

_____
Justin T. Evans
Administrative Judge

# UNITED STATES
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### ATLANTA DISTRICT OFFICE

| | |
|---|---|
| DARNELL W. WALKER,<br><br>Complainant,<br><br>v.<br><br>ROBERT WILKIE, SECRETARY,<br>U.S. DEPARTMENT OF VETERANS AFFAIRS,<br><br>Agency. | EEOC NO.<br>430-2017-00046X<br><br><br>AGENCY NO.<br>2004-0659-2016102631<br><br><br><br><br>DATE: August 21, 2018 |

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2018, I have mailed, First-Class Postage Paid, and/or emailed the foregoing DECISION AND ORDER GRANTING AGENCY'S MOTION FOR SUMMARY JUDGMENT to the following individuals at the addresses listed below:

Darnell W. Walker
12037 Journeys End Trail
Huntersville, NC 28078
darnell.walker@va.gov

Janean B. Dunn, Esq.
Agency Counsel
janean.dunn@va.gov

U.S. Department of Veterans Affairs
Office of Employment Discrimination Complaint
Adjudication (OEDCA)
810 Vermont Ave., N.W.
Washington, D.C. 20420
eeocdecisionsforoedca@va.gov

Justin T. Evans
Administrative Judge